UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF SCRIPSAMERICA, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT SCHNEIDERMAN, an individual, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : No. 16-cv- <br> : <br> : |

## THE ESTATE OF SCRIPSAMERICA, INC.'S COMPLAINT AGAINST ROBERT SCHNEIDERMAN

The Estate of ScripsAmerica, Inc. ("ScripsAmerica" or "Plaintiff"), a Delaware Corporation, by and through the undersigned counsel, hereby sues Defendant Robert Schneiderman ("Schneiderman" or "Defendant"), an individual, and in support thereof states as follows:

### PARTY ALLEGATIONS

1.  Plaintiff is a Delaware health care corporation incorporated under the law of Delaware and with its principal place of business in New Jersey. The Plaintiff is currently a debtor-in-possession in the District of Delaware, Case No. 16-11991. As a debtor-in-possession, ScripsAmerica has a fiduciary duty to its creditors and all interested parties.

2.  Defendant is a citizen of Bucks County, Pennsylvania, is over the age of 18 and is otherwise *sui juris*. Additionally, Defendant is the former President, CEO and board member of Plaintiff.

1

## ALLEGATIONS APPLICABLE TO SUBJECT MATTER JURISDICTION AND VENUE

3. ScripsAmerica is a corporation incorporated under the laws of Delaware with a principal place of business in New Jersey.

4. Schneiderman is a citizen of the Commonwealth of Pennsylvania.

5. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

6. This Court has supplemental jurisdiction over all claims that are so related to the claims in this action that they form a part of the same case or controversy.

7. Venue is proper in this Court pursuant to either 28 U.S.C. § 1391(b)(1) and (2) in that this action is filed in a judicial district in which: (a) any one or more of the defendants reside, as all defendants are residents of the Commonwealth of Pennsylvania, or (b) a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Pennsylvania.

8. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 2201 concerning declaratory judgments.

9. All conditions precedent to Plaintiff instituting and maintaining this action have either occurred or have been excused or waived.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. ScripsAmerica was incorporated under Delaware law in 2008 by Defendant Schneiderman. At material times hereto, Defendant was the Chief Executive Officer of ScripsAmerica and the Chairman of its Board of Directors.

11. For most of its history, ScripsAmerica was a publicly held company subject to reporting and other requirements of the securities laws. Schneiderman signed and certified all filings with the SEC for a number of years.

12. Schneiderman was a convicted felon of a crime involving moral turpitude with a defrauded victim (involving welfare fraud and forged documents) in 1989 by the Commonwealth of Pennsylvania. A true and correct copy of the docket of the 1989 action between Commonwealth of Pennsylvania and Schneiderman is attached hereto as Exhibit "A". This conviction was neither disclosed to ScripsAmerica, its Board or agent, or business partners, nor disclosed in its SEC filings. Had this fact not been concealed with intent to deceive the company and its Board, the damages alleged herein would not have occurred. Indeed, on forms to the Financial Industry Regulatory Authority ("FINRA"), Schneiderman also fraudulently concealed his felony conviction. A true and correct copy of the FINRA Questionnaire is attached hereto as Exhibit "B". For many years, through 2013, the business of ScripsAmerica evolved, with the company registering losses and having few significant operations.

13. The events arise from the time period of 2013 through 2015, in which Schneiderman operated the company with little or no input from any member of the Board of Directors. While the Company's by-laws provide that the Directors are charged with managing the business of the Company, Schneiderman as chief executive officer is charged with the duty of supervising corporate affairs and making reports to the directors and stockholders of ScripsAmerica. This duty and the Board's role was essentially ignored by Schneiderman.

## IRONRIDGE

14. On or about November 2013, Schneiderman negotiated and entered into a stock-transfer agreement with Ironridge Global IV, Ltd., ("Ironridge") a British Virgin Islands entity

3

which was in the business of skirting the securities laws by making loans to public companies and being paid in stock in "court approved" transactions which created free trading stock under an obscure and much-debated exemption to the securities laws.

15. Ironridge, while it had an office in California in 2013, has hidden behind a number of offshore shells and affiliates. The SEC initiated cease and desist proceedings against Ironridge in 2015 alleging that Ironridge's activities were illegal and that Ironridge acted as an unregistered broker-dealer.

16. Schneiderman entered into this transaction with Ironridge without obtaining the Board's approval, nor its consent, nor did he advise the Board of the agreement. Notwithstanding, Schneiderman signed a false statement submitted to the California court that ScripsAmerica's Board had approved the deal as in the best interests of the company.

17. Under the terms of the agreement, Ironridge was to satisfy some $686,000 of ScripsAmerica debt in return for the issuance of shares of ScripsAmerica stock. The stipulation signed by Schneiderman included an agreement to a potentially unlimited "adjustment" mechanism proposed by Ironridge under which the amount of stock issued to Ironridge might increase.

18. Initially, Schneiderman delivered 8.6 million shares of ScripsAmerica stock to Ironridge on or about November 18-19, 2013, and an additional 1.6 million shares on or about February 13, 2014. Both of these issuances were executed by Schneiderman, and the Board was informed it was a *fait accompli*. The value of stock delivered to Ironridge to satisfy the $686,000 debt was over $1.2 million.

19. The agreement approved by Schneiderman – as interpreted by the California court that approved it – required even more stock to be given to Ironridge, at least 1.6 million shares to

4

start. Schneiderman adamantly disagreed with this demand, said so in a form 8-K dated May 12, 2014, and directed the filing of a securities fraud lawsuit against Ironridge on May 22, 2014.

20. Through the lawsuit, Schneiderman on behalf of ScripsAmerica alleged that the principals of Ironridge had defrauded him and violated the securities and other laws. The federal complaint was ultimately dismissed with prejudice. A true and correct copy of May 22, 2014 Federal Complaint is attached hereto as Exhibit "C".

21. Ultimately, a California court enjoined any sale of stock to anyone before Ironridge had received another 87 million shares. Ironridge filed an additional lawsuit in New Jersey seeking damages, and yet a fourth proceeding for malicious prosecution.

22. The total cost of the Ironridge litigation to ScripsAmerica in attorney's fees, and court-ordered sanctions, which is still ongoing, exceeds $2 million.

23. After personally directing and ordering the litigation against Ironridge, and signing declarations and public filings supporting the allegations of the litigation, Schneiderman, on June 26, 2016 (after his resignation from ScripsAmerica) signed and gave to Ironridge a diametrically inconsistent affidavit stating that Ironridge had not been guilty of any improper or manipulative conduct and had complied with its agreement with him. A true and correct copy of June 26, 2016 affidavit is attached hereto as Exhibit "D".

24. If his June 2016 affidavit were true, Schneiderman recklessly and destructively cost ScripsAmerica over $2 million by wrongly involving ScripsAmerica in litigation he knew was improper and based on unfounded allegations. In any case, the unauthorized Ironridge deal, the entry into which was negligent and grossly reckless, the *sine qua non* of which was a false sworn statement by Schneiderman filed with the California court, caused serious and catastrophic damage to ScripsAmerica.

## ILLEGAL MARKETING PRACTICES

25. As damaging as the Ironridge fiasco was for ScripsAmerica, it is only the second-worst harm Schneiderman caused to ScripsAmerica from his service as CEO.

26. In early 2014, Schneiderman directed ScripsAmerica's acquisition of a barely functioning compounding pharmacy in Clifton, New Jersey, Main Avenue Pharmacy, Inc. ("Main Avenue"), as a wholly-owned subsidiary of ScripsAmerica.

27. Schneiderman put in place a business plan in which Main Avenue generated literally millions of dollars of revenue from the sale of pain creams paid for by insurance money. The economics of the deal appeared attractive: due to astronomical pricing allowed by insurers, including federal government insurers, third party "marketers" would be paid a percentage, sometimes as high as 70%, of the total amount paid by insurers.

28. It was a part of Schneiderman's business plan that little or no effort was made to confirm the validity of prescriptions and in fact it was later learned that many prescriptions were prepared not by physicians but by marketers which were "rubber-stamped" with a physician signature, when there was no valid doctor-patient relationship at all. Schneiderman allowed a near-complete failure to collect co-insurance or deductibles owed by patients, the requirement for which was a legally-required control against prescriptions which patients did not want, need or even know about.

29. The net result was that Main Avenue was operated by Schneiderman with such a near-complete lack of internal controls as to allow Main Avenue to be, fundamentally, run by its marketers as a mill for the milking of millions of dollars of insurance money.

30. Schneiderman was advised by outside counsel of the need for internal controls over marketers and the need to require legally proper employment agreements to ensure compliance

6

with applicable laws, including federal anti-kickback laws. Schneiderman rejected this advice with no approval or discussion with the Board, and continued to allow marketers, some of which were convicted felons, to run amok with no control, working under vague and undefined oral agreements.

31. The lack of internal controls at Main Avenue led to millions of dollars of damages. Just one payor, Express Scripts, Inc., upon discovery of one physician whose name was used on robo-signed prescriptions filled by Main Avenue, in May 2016 refused to pay $3.5 million in prescriptions already shipped and demanded repayment of an additional $8.5 million. Other payors such as Caremark and Optum, refused to deal with Main Avenue, costing Main Avenue additional damages.

32. The final straw was a federal criminal investigation which, based on an affidavit that violations of federal fraud and anti-kickback laws were violated, executed a search warrant at Main Avenue's premises on or about June 8, 2016. A true and correct copy of the search warrant is attached hereto as Exhibit "E". The federal criminal investigation is still ongoing.

33. The aftermath of the search warrant, the related investigation, and the decisions of payors alleged above was the complete destruction of the business of Main Avenue, which had it been run properly, would have been a viable and successful ongoing legitimate business generating millions of dollars of profit for itself and ScripsAmerica as its sole owner. Instead, the business is defunct and valueless. Indeed, the reckless and grossly negligent actions of Schneiderman caused its destruction and millions of damages to Main Avenue as well as ScripsAmerica, the full extent of which had not yet been experienced.

## MORE OF SCHNEIDERMAN'S UNAUTHORIZED PROMISES

34. During his tenure as CEO and President, Schneiderman also entered into a number of consulting agreements with individuals without receiving Board approval. The agreements obligated ScripsAmerica to pay Joe Zampetti a fee of $4,000 a month for approximately 18 months, in return for which Zampetti was supposed to promote ScripsAmerica shares and handle investor relations. Schneiderman failed to disclose the existence of this agreement during his tenure at CEO and President, or during his resignation and release negotiations. In fact, when new management took over ScripsAmerica, Zampetti claimed that Schneidermann had verbally promised that he would receive additional ScripsAmerica shares.

35. Schneiderman also promised ScripsAmerica shares to other third parties, including ScripsAmerica creditors, from whom Schneiderman had previously solicited loans. These promises were never disclosed to the Board or management at any time, including when Schneiderman resigned from the company and the parties executed mutual releases.

## SCHNEIDERMAN RESIGNATION AND SEVERANCE AGREEMENT

36. With all of the facts alleged above being concealed, Schneiderman, still being subject to the fiduciary duties of a member of the Board of Directors, and officer, negotiated a self-serving severance agreement with ScripsAmerica in or about June 2015 containing a release by fraudulently concealing the facts which he had a duty to disclose to ScripsAmerica and its Board in violation of his fiduciary duty, including his duty of loyalty.

37. The severance agreement, which was a product of fraud and fraudulent concealment by Schneiderman, is attached hereto as Exhibit "F". During the release negotiations – as during his tenure with the corporation -- Schneiderman failed to disclose many crucial and

8

material facts to ScripsAmerica's new management, including specifically the misconduct and wrongdoing alleged herein.

38. Schneiderman neither disclosed the material facts nor was the agreement fair and reasonable to the corporation, and so it fails under the corporations' by-laws.

39. It was only after Schneiderman resigned from the corporation that Plaintiff learned the full scope of Schneiderman's misconduct – which, in addition to costing the corporation millions, has led to a criminal investigation and the demise of, at least, the Main Avenue subsidiary.

## COUNT I: BREACH OF FIDUCIARY DUTY

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 39, as if set forth fully herein.

40. This is an action for breach of fiduciary duty by misconduct.

41. As a director and chief executive officer of ScripsAmerica, Defendant Schneiderman owed fiduciary duties to ScripsAmerica, including the duties of care and loyalty.

42. Defendant Schneiderman breached his fiduciary duties to ScripsAmerica by:

   a. Knowingly paying and allowing the payment of illegal referral fees to third-party "marketers," in violation of state and federal anti-kickback laws;

   b. Ignoring the advice of legal counsel regarding the payments by and for the illegal marketing scheme;

   c. Entering into a stock-purchase agreement with Ironridge Global, LLC, without the approval of the Board of Directors, and without obtaining legal advice from corporate counsel;

   d. Initiating litigation against Ironridge Global, LLC, without prior approval of the Board of Directors and committing millions of dollars to the litigation;

    e.    Entering into numerous consulting agreements without approval of the Board of Directors;

    f.    Promising shares of stock to corporation creditors without the approval of the Board of Directors;

43. The actions and omissions of Defendant Schneiderman were grossly negligent, reckless or willful and intentional.

44. As a direct and proximate result of Schneiderman's aforesaid breaches of his fiduciary duties, ScripsAmerica has been damaged in an amount in excess of $6,000,000.00.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant for damages, attorney's fees and costs, pre and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT II: BREACH OF FIDUCIARY DUTY

Plaintiff repeats and re-alleges each of the allegations contained in, paragraphs 1 through 39, as if set forth fully herein.

45. This is an action for breach of fiduciary duty by non-disclosure of information that Schneiderman had the duty to disclose, as well as for unauthorized actions performed by a director and chief executive officer.

46. As a director and chief executive officer of ScripsAmerica, Defendant Schneiderman owed fiduciary duties to ScripsAmerica, including the duties of care and loyalty, both of which include the duty to disclose material information to the Board of Directors.

47. Defendant Schneiderman breached his fiduciary duties to ScripsAmerica by:

    a.    Failing to disclose his prior felony conviction;

  b. Failing to disclose the illegal arrangements with the third-party marketers to the ScripsAmerica Board of Directors;

  c. Failing to disclose that the illegal arrangements with the third party marketers were entered into against the advice of corporate counsel;

  d. Failing to disclose multiple consulting agreements to the Board of Directors during Schneiderman's tenure as CEO and during negotiations for his departure from the corporation;

  e. Failing to disclose the promised stock share agreements with creditors to the Board of Directors.

48. The actions and omissions of Defendant Schneiderman were grossly negligent and reckless. If he had complied with the disclosure required by his fiduciary duties, the damages suffered by ScripsAmerica would not have happened.

49. As a direct and proximate result of Schneiderman's aforesaid breaches of his fiduciary duties, ScripsAmerica has been damaged in an amount in excess of $6,000,000.00.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant for damages, attorney's fees and costs, pre and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III: INVALIDITY OF RELEASE

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 39, as if set forth fully herein. This count seeks a declaration of the invalidity of the release contained in the severance agreement, attached hereto as Exhibit "F".

50. The nature of this claim is a claim for declaratory relief or in the alternative for rescission of the severance agreement.

51. As President and CEO of ScripsAmerica and as a fiduciary to the corporation, Defendant Schneiderman had a duty to disclose material information about the corporation's operations and obligations, including: the illegal agreements with third-party marketers made against the advice of corporate counsel; his misconduct with respect to Ironridge; and his improper agreements with other consultants and third parties.

52. During his tenure as President and CEO of ScripsAmerica, and during the negotiation of the terms of his resignation from the corporation, Defendant Schneiderman failed to disclose the material facts and circumstances listed above to ScripsAmerica.

53. Schneiderman did not comply with the material requirements of the By-laws' conflict of interest policy with respect to the severance agreement and its release contained therein. Had he done so, ScripsAmerica would not have entered into the agreement at all and certainly would not have released him.

54. On June 29, 2015, based on the fraudulent concealment by Schneiderman, Plaintiff and Defendant entered into a "Management Reorganization Agreement" that, among other things, governed the terms of Defendant Schneiderman's resignation from the corporation.

55. The "Management Reorganization Agreement" contained a release provision under which Plaintiff agreed to release any claims against Defendant Schneiderman "relating to any activity which occurred prior to the signing of the Management Reorganization Agreement."

56. Plaintiff was fraudulently induced into entering into the release provision and the Management Reorganization Agreement by Defendant Schneiderman's failure to disclose material information about the corporation and its outstanding obligations – specifically, information related to the illegal agreements with third-party marketers, corporate counsel's advice against entering into such agreements, and other consulting agreements to which Defendant Schneiderman

bound Plaintiff without the approval or knowledge of ScripsAmerica's Board of Directors and the other misconduct and omissions alleged herein.

57. Defendant Schneiderman concealed this information despite his duty to disclose with the intention that ScripsAmerica would rely on his material omissions in agreeing to sign the Release.

58. ScripsAmerica justifiably relied on Schneiderman's material omissions in agreeing to execute the release and the Management Reorganization Agreement. But for Schneiderman's material omissions, ScripsAmerica would not have executed the Release.

59. As a direct and proximate result of Schneiderman's aforesaid material omissions, ScripsAmerica has been damaged.

60. In addition, Schneiderman did not comply with the material terms of the Management Reorganization Agreement. He sold stock in violation of the terms of the agreement; he failed to cooperate with ScripsAmerica as required; he encouraged lawsuits against ScripsAmerica; and he illegally and improperly accessed and made unauthorized changes in the email system of Scrips.

61. Based on the fraud, the violation of the conflict of interest policy, and his breaches of the Settlement Agreement, the release should be invalidated and Schneiderman required to repay to ScripsAmerica all consideration received under the Agreement.

62. ScripsAmerica is ready willing and able to return Schneiderman to the status quo ante, with any equitable adjustments required by the Court, if deemed necessary by the Court as a condition to the relief requested herein.

WHEREFORE, Plaintiff respectfully requests that this Court declare that any Release in favor of Schneiderman is invalid; that the Court enter any appropriate relief in favor of Scrips America as the facts and law may warrant, and enter any other appropriate relief.

DATED: November 18, 2016

Respectfully submitted,

CIARDI CIARDI & ASTIN
*Attorneys for The Estate of ScripsAmerica, Inc.*
2005 Market Street, Suite 3500
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

BY: _____
ALBERT A. CIARDI, III
Pennsylvania Bar No. 63598
Email: aciardi@ciardilaw.com
NICOLE M. NIGRELLI,
Pennsylvania Bar No. 84471
Email: nigrelli@ciardilaw.com

and

CIARDI CIARDI & ASTIN
1204 N. King Street
Wilmington, Delaware 19801
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
(302) 658-1100 telephone
(302) 658-1300 facsimile

and

COFFEY BURLINGTON, P.L.
*Co-Counsel for ScripsAmerica, Inc.*
Jeffrey B. Crocket (FBN: 347401)
2601 South Bayshore Drive, PH1
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
jcrockett@coffeyburlington.com